# IN THE UNITED STATES COURT OF APPEALS

## FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| QUINTEZ CEPHUS,<br><br>_Plaintiff/Appellant_<br><br>v.<br><br>REBECCA BLANK, LAUREN HASSELBACHER, and BOARD OF REGENTS OF THE UNIVERSITY OF WISCONSIN SYSTEM,<br><br>_Defendants/Appellees_ | Appeal from the United States District Court for the Western District of Wisconsin, The Honorable William M. Conley, Presiding<br><br><br>Appeal No. 25-3089 |

## PLAINTIFF-APPELLANT'S REPLY IN SUPPORT OF APPEAL

ANDREW MILTENBERG
STUART BERNSTEIN
KRISTEN MOHR
NESENOFF & MILTENBERG, LLP
_Attorneys for Plaintiff-Appellant_
_Quintez Cephus_
363 Seventh Avenue, 5th Floor
New York, New York 10001

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................1

II.   ARGUMENT...........................................................................................3

   A.   THE DISTRICT COURT'S EVIDENTIARY RULINGS STRIPPED THE RECORD OF THE EVIDENCE SUPPLYING APPELLANT'S CASE SPECIFIC INFERENCE OF SEX DISCRIMINATION.......................................3

      i.   The exclusionary ruling was disproportionate to the technical defect 4

      ii.   Rule 37 did not justify excluding Appellees' own productions and UW created materials....................................................................................6

      iii.   The exclusions were outcome determinative ................................8

   B.   APPELLEES IMPROPERLY DISSECT THE RECORD INSTEAD OF CONSIDERING THE TOTALITY OF THE EVIDENCE ..........................10

   C.   APPELLEES' FACIALLY NEUTRAL EXPLANATIONS DO NOT ENTITLE THEM TO SUMMARY JUDGMENT...............................................13

      i.   Promptness did not require adjudicating responsibility while critical evidence was unavailable...............................................................................13

      ii.   Appellant's inability to testify during the University proceedings was not merely a voluntary strategic choice...................................................15

   D.   THE INVESTIGATION AND HEARING CONTAIN CASE-SPECIFIC EVIDENCE SUPPORTING AN INFERENCE OF SEX DISCRIMINATION......................................................................................17

i.  UW Specific Institutional Pressure and Gender-Based Messaging Provide Context for the University's Procedural Decisions............................17

ii.  The University favored the complainants in scheduling .................19

iii.  Sharing one complainant's statement with the other and filtering credibility questions were not facially neutral in operation............................20

iv.  The record permits an inference that the University approached Appellant as the presumed male perpetrator.......................................22

CONCLUSION.......................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Brady v. Maryland,*
373 U.S. 83 (1963) ........................................................................................12

*David v. Caterpillar, Inc.,*
324 F.3d (7th Cir. 2003) ...............................................................................5

*Doe v. Columbia Coll. Chicago,*
933 F.3d (7th Cir. 2019) .................................................................. 7, 10, 13

*Doe v. Purdue Univ.,*
928 F.3d (7th Cir. 2019) .............................................................. 7, 13, 14, 16

*Doe v. Univ. of S. Ind.,*
43 F.4th (7th Cir. 2022) .................................................................................8

*Gash v. Rosalind Franklin Univ.,*
117 F.4th (7th Cir. 2024) ..........................................................................8, 9

*Hedrich v. Bd. of Regents of Univ. of Wisconsin Sys.,*
274 F.3d (7th Cir. 2011) ...............................................................................3

*Joll v. Valparaiso Cmty. Schs.,*
953 F.3d (7th Cir. 2020) ...........................................................................1, 8

*Midwest Imports, Ltd. v. Coval,*
71 F.3d (7th Cir.1995) ...................................................................................3

*Musser v. Gentiva Health Servs.,*
356 F.3d (7th Cir. 2004) ...........................................................................5, 6

*Ortiz v. Werner Enters., Inc.,*
834 F.3d (7th Cir. 2016) ...........................................................................1, 8

*Schwake v. Arizona Bd. of Regents,*
967 F.3d (9th Cir. 2020) .............................................................................14

*Sherrod v. Lingle,*

    223 F.3d (7th Cir. 2000) ................................................................................4

*Waldridge v. Am. Hoechst Corp.,*

    24 F.3d (7th Cir. 1994) ................................................................................3

**Rules**

Fed. R. Civ. P. 37(c)(1) ................................................................................5

Fed. R. Civ. P. 56(c) ................................................................................4

Fed. R. Civ. P. 83(a)(2 ................................................................................4

## I.  <u>INTRODUCTION</u>

Appellees devote much of their brief to explaining why each individual circumstance identified by Appellant is insufficient, standing alone, to establish discrimination under Title IX. However, the question at summary judgment is whether the record, viewed as a whole and in the light most favorable to Appellant, permits a reasonable inference that the University discriminated against him on the basis of sex. *Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 928 (7th Cir. 2020); *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 763, 765 (7th Cir. 2016).

Appellant does not contend that any single email, scheduling decision, investigative step, or campus publication independently establishes sex discrimination. Rather, his claim rests on the cumulative force of the evidence. The record reflects a University operating amid significant pressure to demonstrate that it was protecting female students from male perpetrators of sexual assault. Against that backdrop, University officials proceeded with a disciplinary hearing despite knowing that material evidence remained unavailable while the parallel criminal prosecution was pending. Officials shared one complainant's statement with the other before completing the

investigation, accommodated complainant scheduling requests while declining to postpone the hearing so Appellant's chosen Title IX counsel could attend, and limited Appellant's ability to test credibility in a case that turned almost entirely on credibility. After the criminal trial produced the previously unavailable evidence, the Chancellor concluded that the original finding of sexual assault could not stand and readmitted Appellant. Appellant Br. 28, 33-51.

Considering the record as a whole, a reasonable jury could conclude that the University's asserted explanations do not fully account for the challenged decisions. The district court reached the opposite conclusion only after excluding evidence supplying much of the case-specific context for Appellant's claim. Having narrowed the record in that manner, it repeatedly relied on the resulting absence of evidence to conclude that Appellant failed to present a particularized showing of sex discrimination.

Appellees' arguments ultimately ask this Court to decide that their benign explanations are more persuasive than Appellant's competing inference. That is not the role of summary judgment. Where the evidence

permits competing reasonable inferences, the choice between them belongs to the jury, not the court.

For these reasons, and those set forth in Appellant's opening brief, the judgment should be reversed.

## II. <u>ARGUMENT</u>

### A. THE DISTRICT COURT'S EVIDENTIARY RULINGS STRIPPED THE RECORD OF THE EVIDENCE SUPPLYING APPELLANT'S CASE SPECIFIC INFERENCE OF SEX DISCRIMINATION

Appellees characterize the District Court's evidentiary rulings as routine enforcement of summary judgment procedures. Appellees' Br. 21-31. However, that characterization overlooks the nature of Appellant's submission and the scope of the District Court's exclusions. Appellant did not ask the court to sift through an uncited record. He submitted declarations, attached the supporting exhibits, and cited those materials throughout his opposition brief. The District Court nevertheless declined to consider the evidence because Appellant presented additional facts through declarations rather than a separate proposed findings document. The Court then excluded additional exhibits under Rule 37, including documents produced by Appellees and materials created by the University itself. The combined effect was to remove the evidence that

3

connected the University's procedural decisions to Appellant's Title IX claim.

### i. The exclusionary ruling was disproportionate to the technical defect

Appellant does not dispute the District Court's authority to enforce its summary judgment procedures. Nor does he suggest that the Court was required to search the record or reconstruct his case from scattered materials. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920-22 (7th Cir. 1994). The question, however, is whether the District Court exercised that discretion proportionately under the circumstances presented here.

Appellant's submission bore little resemblance to the deficient presentation in *Hedrich*. There, the party submitted sprawling paragraphs containing long strings of propositions, sometimes extending for pages, with citations that failed to identify where particular propositions appeared. *Hedrich v. Bd. of Regents of Univ. of Wisconsin Sys.*, 274 F.3d 1174, 1178 (7th Cir. 2011). Nor did Appellant simply fail to respond to proposed facts and bury a narrative in a memorandum, as in *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1313 (7th Cir.1995). Appellant responded to Appellees' proposed findings. He also filed a declaration and counsel declaration organizing the additional facts and

exhibits, and his opposition brief directed the court to those materials. Appellant Br. 23-26. Appellees' "roadmap" analogy therefore misses the mark. Appellees' Br. 22-24. The asserted deficiency concerned the form of Appellant's submission, not the Court's ability to locate the supporting evidence. Appellees themselves demonstrated that the evidence was readily identifiable by fully addressing it on the merits.

Rule 56 expressly permits parties to support factual assertions with declarations and affidavits. Fed. R. Civ. P. 56(c). The District Court's procedures required those facts to be set out in proposed findings, but Appellant had already filed the supporting evidence and cited it throughout his opposition. Appellant Br. 24-25. Under those circumstances, disregarding the evidence altogether was disproportionate to the procedural defect. Appellant submitted the evidence through sworn declarations with supporting exhibits and cited those materials throughout his opposition. The defect therefore was one of form rather than substance. See Fed. R. Civ. P. 83(a)(2) ("A local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply."); *see also Sherrod v. Lingle*, 223 F.3d 605, 612 (7th Cir. 2000) ("we recognize

5

that in a case such as this where exclusion necessarily entails dismissal of the case, the sanction 'must be one that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction.'") (citations omitted).

The District Court's ruling excluded Appellant's declaration and multiple exhibits addressing the very issues on which the Court later concluded the record was insufficient, including UW's specific pressure, campus messaging, the criminal proceedings, complainant influence, and the hearing process. Dkt. 72 at 1-4; Appellant Br. 23-26. Having excluded that evidence, the Court then relied on its absence in granting summary judgment.

### ii. Rule 37 did not justify excluding Appellees' own productions and UW created materials

Fed. R. Civ. P. 37(c)(1) provides for exclusion unless the failure to disclose was substantially justified or harmless. Although the rule is often described as imposing an "automatic" sanction, that characterization applies only when the nondisclosure was neither substantially justified nor harmless. *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004) ("The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-

disclosure was justified or harmless"). The relevant considerations include prejudice or surprise, ability to cure, disruption, and bad faith or willfulness. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). Respectfully, as noted below, there was no prejudice nor surprise to the Appellees and the Appellant did not act willfully nor in bad faith.

Appellant identified multiple exhibits bearing Appellees' Bates stamps, including Exhibits 22-27 and 39-45. Appellant Br. 26-29. Because Appellees produced those documents in discovery, any deficiency in Appellant's interrogatory responses did not prejudice their ability to address the evidence. The same is true of the other excluded exhibits, which consisted of University created materials, including a Chancellor's statement, a campus sexual assault climate task force report, and a UW Police awareness video. Appellant Br. 27-28. Those materials originated with the University and were already known to Appellees.

Appellees respond that Appellant was required to identify which documents supported his contentions, even if Appellees already possessed those documents. Appellees' Br. 25-31. That may establish a technical discovery violation, but it does not show that excluding central merits evidence was a proportionate sanction. Rule 37 asks whether the

failure caused prejudice, not simply whether a disclosure obligation was violated. The fact that Appellees already possessed their own documents is directly relevant to that inquiry.

The other factors likewise favored consideration or a lesser remedy. There was no impending jury trial that would be disrupted by the materials' consideration on summary judgment. Appellees briefed the materials and their significance, demonstrating that the alleged prejudice was curable and, in substantial part, already cured.

The sanction was especially severe because the evidence went to the dispositive question in this matter. Excluding the University's own materials and productions, when Appellees could and did address them and no trial schedule was disrupted, was not proportionate to the technical violation at issue.

### iii.  The exclusions were outcome determinative

The Seventh Circuit has stated, "We urge district courts to carefully consider Rule 37(c), including the alternate sanctions available, when imposing exclusionary sanctions that are outcome determinative." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 760 (7th Cir. 2004). In this case, the evidentiary rulings and the summary judgment ruling

cannot be considered separately. Appellees defend the exclusion of Appellant's evidence and then argue that the remaining record contains no case specific evidence connecting background pressure to Appellant's disciplinary proceeding. The District Court likewise relied on the absence of evidence, concluding that the record did not show UW remained subject to prior federal pressure, lacked sufficient UW specific campus climate evidence, and did not support an inference of sex discrimination. Yet Appellant's excluded declaration and exhibits addressed each of those issues. Excluding that evidence and then relying on its absence in granting summary judgment demonstrates why the evidentiary ruling was not proportional and harmless.

If this Court concludes that the declaration and exhibits should have been considered, the summary judgment ruling cannot stand because it was based on an incomplete record. The question is not whether any single excluded exhibit is independently dispositive, but whether the excluded evidence, considered with the record as a whole, could have affected the summary judgment analysis. Moreover, as discussed below, the existing record permits a reasonable inference of sex

discrimination even apart from the excluded evidence. The excluded evidence further strengthens that inference.

## B. APPELLEES IMPROPERLY DISSECT THE RECORD INSTEAD OF CONSIDERING THE TOTALITY OF THE EVIDENCE

Appellees correctly state that the ultimate question is whether the evidence permits a reasonable inference that the University discriminated against Appellant on the basis of sex. *Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 854–55 (7th Cir. 2019), *citing Doe v. Purdue Univ.*, 928 F.3d 652, 668–69 (7th Cir. 2019). Appellees' brief asks this Court to repeat the District Court's errors by evaluating each category of evidence separately and explaining why none, *standing alone*, supports an inference of discrimination. The analysis never addresses whether the categories considered together permit that inference.

The cases on which both parties rely take a different approach. *Gash* explains that "[a]lthough the factors assessed are case dependent, the 'ultimate inquiry must consider the totality of the circumstances.'" *Gash v. Rosalind Franklin Univ.*, 117 F.4th 957, 962 (7th Cir. 2024) (citing *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 792 (7th Cir. 2022)). More specifically, *Joll* reversed summary judgment where "[t]he district court

appears to have erred by doing what we have repeatedly said a court should not: 'asking whether any particular piece of evidence proves the case by itself,' rather than aggregating the evidence 'to find an overall likelihood of discrimination.'" *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 924 (7th Cir. 2020) (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 763, 765 (7th Cir. 2016).

The distinction matters because circumstantial evidence often derives its significance from the record as a whole. Generalized pressure, a procedural irregularity, or sensitivity toward complainants, standing alone, may not establish discrimination against male respondents. However, those circumstances take on a different significance when considered together with evidence of complainant favoritism, exclusion of material evidence, treatment of Appellant's criminal proceedings, limits on credibility testing, and the University's later conclusion that the omitted evidence undermined the sexual assault finding.

Appellees' own arguments illustrate the improper isolation of facts. Appellees contend that the campus video did not affect this case, the complainants' communications did not dictate any decision, sharing the first statement was a neutral investigative choice, proceeding during the

criminal case reflected promptness, scheduling reflected administrative necessity, and filtered questioning applied formally to both sides. At summary judgment, the question is whether the evidence viewed as a whole permits a reasonable juror to infer that the University's findings were motivated by gender. *Gash*,117 F.4th at 962.

The district court acknowledged the totality standard but then analyzed each allegation separately, asking repeatedly whether that single allegation was tied to sex. Its concluding statement that the evidence did not "begin to show" sex bias rests on that segmented analysis and on the prior exclusion of significant evidence. Dkt. 72 p.31, A-31. Appellees repeat the same approach by insisting that every irregularity is "facially divorced from sex." Appellees' Br. 40-41. However, a facially neutral fact may nevertheless support an inference of discrimination when viewed in context.

Appellant does not contend that every respondent in every sexual misconduct case is male or that every complainant is female. Appellant contends that in this specific proceeding, against this male athlete, the University's complainant-favoring choices occurred within a UW specific environment presenting perpetrators as overwhelmingly male and

12

institutional responsibility as protection of women from male sexual violence. Viewed together, the institutional context and the case-specific evidence permit the inference recognized in *Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 855 (7th Cir. 2019).

## C. APPELLEES' FACIALLY NEUTRAL EXPLANATIONS DO NOT ENTITLE THEM TO SUMMARY JUDGMENT

### i. <u>Promptness did not require adjudicating responsibility while critical evidence was unavailable.</u>

Appellees' principal explanation for proceeding during the criminal case is that federal and state rules required prompt resolution. Appellees' Br. 41-44. However, promptness is not the same as inflexibility, and the existence of a promptness obligation does not establish that UW had to adjudicate responsibility and impose expulsion on the record then available.

Appellant does not argue that a criminal investigation automatically stays every Title IX matter. He argues that UW knew this case was exceptional given that (i) law enforcement possessed police reports, surveillance material, witness information, and other evidence directly bearing on credibility, (ii) the evidence could not be obtained through the University's process, and (iii) Appellant faced felony charges

arising from the same events. Appellant Br. 37-42. The University nevertheless elected to reach a final responsibility determination before that evidence became available.

While Appellees cite guidance stating that criminal investigations do not relieve schools of their duty to respond promptly, that proposition does not answer the actual dispute. UW could respond, provide supportive measures, preserve evidence, investigate available information, and set reasonable extensions without making a final credibility determination on an incomplete record. The cited rules contemplated reasonably prompt timeframes, not an inflexible deadline overriding case specific good cause.

While Appellees describe the decision as neutral compliance with law, a jury could instead view "promptness" as the justification selected for moving forward with a high-profile male respondent's case despite known evidentiary gaps. The question at summary judgment is whether that competing inference is reasonable when combined with the alleged surrounding pressure and complainant favoring choices.

Moreover, the University's later action strengthens that inference. Once the criminal evidence became available, the Chancellor evaluated

the totality of police reports, trial evidence, and other materials and concluded that the sexual assault finding should be overturned. That institutional reversal demonstrates that the missing evidence was not critical and changed the University's own assessment of responsibility.

### ii. <u>Appellant's inability to testify during the University proceedings was not merely a voluntary strategic choice.</u>

Appellees repeatedly characterize Appellant's inability to present the criminal evidence as a choice. Appellees' Br. 44-50. However, that description minimizes the constitutional and practical dilemma UW knew he faced. Appellant was defending felony charges based on the same allegations. Providing defense evidence to the University could expose his criminal defense before trial and risk self-incrimination. Moreover, Appellant did not possess every relevant law enforcement item and choose to withhold it. The majority of exculpatory evidence was not provided to Appellant until after the University investigation report was finalized. Additionally, the prosecution expressly warned that "providing reports to any witness severely harms the criminal case." Appellant Br. at 41. A reasonable juror could therefore conclude that the University placed Appellant in an untenable position as he was forced to choose

between his liberty and his education, which was a decision that the female complainants did not have to make.

The criminal discovery rules cited by Appellees do not establish that every item was freely usable in a parallel university proceeding or that disclosure carried no strategic cost. Nor does *Brady v. Maryland*, 373 U.S. 83 (1963) transform prosecutorial disclosure obligations into a rule that an accused student can safely turn a criminal defense file over to university officials before trial.

Appellees argue that Appellant has no legal authority establishing a right to postpone the university process. Appellees' Br. 46-50. However, Appellant need not prove an independent due process entitlement to a stay. The issue is whether UW's insistence on proceeding, despite knowing that the male respondent could not meaningfully use critical exculpatory evidence without jeopardizing a felony defense, contributes to an inference of sex bias when considered with the rest of the record. A jury could find that UW treated the resulting evidentiary imbalance as the male respondent's problem while treating the female complainants' interests in speed and emotional closure as institutional imperatives.

**D. THE INVESTIGATION AND HEARING CONTAIN CASE-SPECIFIC EVIDENCE SUPPORTING AN INFERENCE OF SEX DISCRIMINATION**

### i.     UW Specific Institutional Pressure and Gender-Based Messaging Provide Context for the University's Procedural Decisions

Generalized national criticism or rescinded federal guidance, standing alone, does not prove that the officials in this case discriminated. Appellees' Br. 35-40; *Columbia College*, 933 F.3d at 855. *Columbia College* requires generalized pressure to be connected to facts particular to the plaintiff's case. *Id*. Appellant supplied those facts, including but not limited to direct complainant communications and accommodations, statement sharing amongst complainants, refusal to await material evidence, denial of the requested hearing date for chosen Title IX counsel, filtered credibility questioning, and later reversal. Appellees effectively convert the particularity requirement into a demand for direct evidence, mistaking the required standard.

Indeed, Appellant's evidence was not limited to the 2011 Dear Colleague Letter. He offered UW specific materials and events, including campus criticism concerning protection of female students, a campus climate report, statements from University leadership, and a UW Police

video stating that more than 98 percent of identified perpetrators were men. Appellant Br. 31-35. Appellees contend that the materials were old, statistically accurate, or part of general prevention efforts. Appellees' Br. 38-40. However, that does not make the evidence irrelevant when the decisionmakers were administering a process in which the accused was male, the complainants were female, and institutional messaging cast sexual assault through a male perpetrator lens. *Purdue* recognized that external pressure and a slanted process can jointly support an inference of sex discrimination. *Purdue*, 928 F.3d at 669; *see also Schwake v. Arizona Bd. of Regents,* 967 F.3d 940, 951 (9th Cir. 2020).

Appellees further contend that pro-complainant or survivor-centered practices are not inherently anti-male. Appellees' own brief undermines this argument when viewed in context of this case. Indeed, Appellees state that "evidence of pro-complainant bias does not support an inference of anti-male discrimination because both men and women may be victims." However, in a University environment where the record shows that over 98% of perpetrators were male, pro-complainant and anti-male bias correlate. Appellant's claim depends on the combination of gender motivated institutional pressure plus complainant-favoring

choices in a proceeding against a male athlete. Viewed in the gendered institutional context reflected in the record, however, a reasonable jury could reach a different conclusion.

### ii. The University favored the complainants in scheduling

Appellees characterize the hearing schedule as a series of accommodations for Appellant. Appellees' Br. 50-54. However, the record permits a different view. Appellant sought a date at the beginning of the spring semester when his chosen Title IX counsel could attend. Yet the University selected an earlier date after consulting complainant availability and treated Appellant's counsel conflict as collateral. Appellees emphasize that Appellant was allowed an advisor and that the governing rules did not guarantee any particular lawyer. That argument, however, misses the mark. Appellant stated that female complainant scheduling requests and objections were treated as reasons to structure the process, while the male respondent's request for the advisor who had handled the matter was rejected as unreasonable[1]. The District Court also stated that "that the University likely should have rescheduled the

---

[1] Appellees also note that accommodations were made for both sides. However, on Appellant's evidence, the complainants' preferences shaped timing and process while his request to preserve meaningful participation by chosen Title IX counsel was denied.

hearing to a date when his chosen advocate would be present." Dkt. 72 p.34, A-34.

The same pattern appears in communications with the complainants and their families. Appellees insist that the University did not "bow" to pressure. Appellees' Br. 52-54. However, whether pressure influenced the University officials is a factual inference. Repeated communications, consultation about scheduling, and responsive accommodations can support an inference of influence even without an express admission that the complainants dictated the result.

### iii. Sharing one complainant's statement with the other and filtering credibility questions were not facially neutral in operation.

Before obtaining Complainant 2's own substantive account, the Title IX Coordinator shared Complainant 1's written statement with Complainant 2's support person and asked whether Complainant 2 wished to proceed. Appellant Br. 46-47. Appellees describe that as a neutral effort to determine whether the second complainant wanted an investigation. However, the District Court "agree[d] that Hasselbacher likely should not have permitted Complainant 2 to read Complainant 1's statement before obtaining an independent statement from Complainant

2." Dkt. 72 p.33, A-33. A reasonable juror could therefore find that the procedure risked alignment or corroboration of accounts before they were independently memorialized. The University itself facilitated exposure to one account before securing the other, in a case where credibility and consistency were central. That choice favored the complainants' ability to present mutually reinforcing narratives and is difficult to reconcile with an investigation designed to preserve independent recollections.

The hearing officer's treatment of questions during the hearing presents a similar issue. Appellant's advisor could not question the complainants directly, and proposed questions were routed through the committee chair. Appellant identified a concrete instance in which counsel sought to ask whether Complainant 1 had a blood alcohol test when nurses administered medication, but the chair softened and reframed the inquiry by introducing the premise that her hospital recollection was "fuzzy" and asking more generally whether she remembered interacting with nurses or receiving medication. Appellant Br. 49-50. Appellees contend that indirect questioning applied equally to both parties and that the chair's wording reflected prior testimony. However, where the University's case depended on complainant

credibility, filtering a defense question in a manner that supplied an excuse for memory failure could reasonably be viewed as protective of the complainant. In combination with the unavailable evidence and other procedural choices, that fact contributes to the cumulative inference of gender bias recognized in *Purdue*.

### iv. <u>The record permits an inference that the University approached Appellant as the presumed male perpetrator.</u>

Appellees maintain that the University did not presume guilt because Appellant received notice, evidence, opportunities to respond, and a hearing. However, those procedural steps do not foreclose an inference about the mindset with which officials evaluated the evidence.

Appellant identified the repeated use of the criminal complaint, the reluctance to include or credit exculpatory material in the investigative narrative, the statement sharing amongst complainants, and the decision to adjudicate before the criminal evidence became available. The University's broader messaging framed sexual violence around male perpetrators and female protection. Viewed together, those facts permit an inference that officials approached the case through the expected script of female victims and a male perpetrator.

Appellees answer each fact separately and insist that both inculpatory and exculpatory material reached the committee. Even assuming that some exculpatory material was transmitted, a jury could still find that the process furthered the accusatory narrative and deprived the defense evidence of equal weight and development. Title IX does not require proof that every procedural protection was denied. The issue is whether gender plausibly influenced the adverse outcome.

The prompt readmission after a fuller evidentiary record became available reinforces that inference. A jury could conclude that the original process did not merely make harmless administrative mistakes. Instead, it reached the wrong sexual assault determination because it proceeded through a gender biased, complainant-favoring framework without the evidence necessary to challenge the expected narrative.

CONCLUSION

In light of the foregoing, Appellant respectfully requests that his appeal be granted in its entirety. The judgment should be reversed and the case remanded for trial.

Dated: July 23, 2026

Respectfully Submitted,

**NESENOFF & MILTENBERG, LLP**
*Attorneys for Appellant Quintez Cephus*

By: **/s/ Kristen Mohr**
   Kristen Mohr, Esq.
   Andrew Miltenberg, Esq. (*Pro hac vice*
   forthcoming)
   Stuart Bernstein, Esq. (*Pro hac vice*
   forthcoming)
   363 Seventh Avenue, 5th Floor
   New York, New York 10001-3904
   T. (212) 736-4500
   kmohr@nmllplaw.com
   amiltenberg@nmllplaw.com
   sbernstein@nmllplaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By: */s/ Kristen Mohr*
Kristen Mohr

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(c), this brief contains 4,094 words. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century font.

Dated: July 23, 2026 By: */s/ Kristen Mohr*
Kristen Mohr